UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE:      RENNIE PETROLEUM CORPORATION,      Case No. 07-30239-KRH
Chapter 11
Debtor.

## MEMORANDUM OPINION

Before the Court is the motion of Rennie Petroleum Corporation (the "Debtor") for entry of an order approving the retroactive employment of a professional person under 11 U.S.C. § 327 (the "Motion"). In the alternative, the Debtor's Motion requests the Court to enter an order awarding compensation to the professional person for "substantial contribution" made to the case under 11 U.S.C. § 503(b)(4). The Official Committee of Unsecured Creditors (the "Committee") filed an objection to the Motion opposing the retroactive approval of the employment and the award of compensation (the "Committee's Objection"). The Court held a hearing on January 7, 2008 to consider the Motion and the Committee's Objection (the "Hearing"). The Assistant United States Trustee appeared at the Hearing with counsel for the Committee in opposition to the Motion. Counsel for the Debtor appeared at the Hearing and argued in favor of the Motion. After considering the testimony elicited from the professional person, Eric Martin ("Martin"), and from the former counsel for the Committee, Christopher Jones, as well as certain documentary evidence and the argument of counsel, the Court makes the following findings of fact and conclusions of law.

The Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code in this Court on January 23, 2007. On the same date, the Debtor filed an application to employ Cantor Arkema, P.C. as counsel for the Debtor. Two days later, on January 25, 2007, the Debtor filed

an application to employ Robert W. Hansen as the Debtor's accountant and financial advisor. The Debtor did not seek to employ Martin at the outset of the case.

Martin began to perform work for the Debtor in late February of 2007. Martin conducted an analysis of the Debtor's business operations and its prospects for reorganization. It is not entirely clear what the discussions and understandings were between the Debtor and Martin concerning his job responsibilities or his compensation. The Debtor initially considered employing Martin as its chief financial officer. The Debtor later considered engaging him as a consultant. Sometime during the course of these considerations, the parties contemplated that Martin would become the investment banker for the Debtor to assist in the marketing and sale of the Debtor's business. Martin testified that if he had become employed by the Debtor in this latter capacity to assist the Debtor in the sale of its business as an investment banker, his compensation for that work would have been substantially greater than the amount now requested by the Debtor in its Motion. Had Martin applied for employment at the time he commenced working for the Debtor, he would have been precluded from pursuing this more lucrative engagement. His employment by the Debtor would have eliminated his status as a disinterested person.[1] The Debtor did not provide at the Hearing any written agreements, memoranda or notes that indicated the parties' expectations concerning the type or extent of Martin's services or the manner in which he was to be compensated.

In early April 2007, the Debtor decided, based upon the analysis completed by Martin and in consultation with the Committee, to undertake the sale of its business in lieu of reorganization. Although Martin applied for the position, the parties selected Matrix Capital

---

[1] One of the requirements for employment of a professional person is that the professional be a disinterested person. *See* 11 U.S.C. § 327(a) (2000). The term "disinterested person" is defined in the Bankruptcy Code as, among other things, a person who: "is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor…." 11 U.S.C.A. § 101(14)(B) (Pamph. 1 2007).

2

Markets Group, Inc. as the Debtor's investment banker to serve as its sales agent. Only once this selection process had been completed did the Debtor file its Motion on May 25, 2007, for the entry of an order approving the employment of Martin as a professional person under 11 U.S.C. § 327 retroactive to February 22, 2007.

The Committee's Objection was timely filed on June 6, 2007. The hearing initially scheduled on the Motion and the Committee's Objection was adjourned by agreement of the parties on several occasions. Pursuant to a separate motion not contested by the Committee, the Debtor obtained this Court's approval to sell substantially all of the assets of the estate in this case on September 6, 2007. As of the time of the Hearing on this Motion, the sale of the Debtor's business pursuant to § 363 of the Bankruptcy Code had been fully consummated.

The Court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) and (O). Resolution of this matter requires the Court to address the interaction between §§ 327, 328 and 330 of the Bankruptcy Code and the case law relevant to the facts of this case.

A professional person may be compensated from the bankruptcy estate in a Chapter 11 case only if that professional's employment was properly authorized by the court pursuant to 11 U.S.C. §§ 327 or 1103. *See In re Hagan*, 145 B.R. 515, 518 (Bankr. E.D. Va. 1992). A professional who performs services for a debtor in possession without first securing an order approving employment will be treated as a volunteer notwithstanding that the services rendered may have been beneficial to the bankruptcy estate. *In re Fountain Bay Mining Co.,* 46 B.R. 122, 124 (Bankr. W.D. Va. 1985).[2] Here, the Debtor failed to obtain the Court's approval of Martin's

---

[2] The policy behind §§ 330 and 327 of the Bankruptcy Code is that estate assets may not be used to compensate professionals who have not been properly employed. *See In re Garland Corp.,* 8 B.R. 826, 828 (Bankr. D. Mass.1981) ("There is one absolute basic condition precedent to any fee application. There must be Court authorization prior to the services being rendered for both the person and the services. That counsel cannot be paid

3

employment prior to the commencement of the services for which Martin expected to be paid. Requiring prior court authorization of employment affords the Court as well as the parties in the case the opportunity to assess the wisdom or propriety of using estate assets in the manner proposed. It is a means by which the Court can control administrative expenses.

> The court must make the initial determination of the propriety of hiring consultants to assure that the costs of such services will not outweigh the benefits, and to insure that the door is not opened to costly problems invited by the terrific opportunity for abuses which would exist if the debtor-in-possession were allowed to hire his own selected staff of consultants without the independent detached assessment of the court.

*In re Carolina Sales Corp.,* 45 B.R. 750, 754 (Bankr. E.D.N.C. 1985). The retroactive approval of Martin's employment would undermine this important procedural safeguard.

As indicated by the Debtor in its submissions, courts may award compensation notwithstanding the failure to comply with the clear requirements of § 327 of the Bankruptcy Code, but only in extraordinary circumstances. *See Binswanger Cos. v. Merry-Go-Round Enters.,* 258 B.R. 608, 612–13 (D. Md.), *aff'd,* 24 F. App'x 135 (4th Cir. 2001) (denying retroactive appointment of broker where broker knew of requirement to obtain court approval and his reasons for failing to do so did not rise to level of excusable neglect). This Court has explained previously the circumstances under which professional compensation may be awarded although the proper procedures concerning the employment of such professional had not been followed. In *In re Tidewater Mem'l Hosp.*, 110 B.R. 221 (Bankr. E.D. Va. 1989), Judge Tice set out a two-part test for determining when extraordinary circumstances would permit retroactive employment. That test requires (1) the professional to satisfactorily explain the failure to obtain prior approval of employment and (2) the professional to meet the requirements set forth in § 327

---

for unauthorized services rendered is a hard and fast, albeit somewhat harsh to the ignorant volunteer, rule of bankruptcy law, made necessary if the Court is to maintain control of costs.") (citations omitted); 2 Collier on Bankruptcy ¶ 330.03[2] (Lawrence P. King ed., 15th ed. rev 2007).

4

and Rule 2014(a), aside from that of obtaining timely court appointment. *Id*. at 226. The Debtor, as the proponent of the Motion for the retroactive approval of the professional's employment, bears the burden to establish that the test has been met.

The Debtor has not explained satisfactorily its failure to obtain prior approval of Martin's employment by the estate. The Debtor initially planned to hire Martin as a salaried officer. Later the Debtor considered employing Martin to oversee the sale of its business pursuant to § 363 of the Bankruptcy Code. Both of these situations would have required the prior approval of the Court. The competing roles in which it had been contemplated that Martin might serve the estate were mutually exclusive.[3] It appears that the parties elected to delay the submission of the initial employment application so as not to preclude Martin from consideration for engagement as the Debtor's investment banker. While the Court is sympathetic to Martin's situation (and nothing about the Court's ruling is intended to reflect on Martin or the services he provided), the Code requires, and proper functioning of bankruptcy cases demands, that the procedures in the Code and the Bankruptcy Rules be followed as they relate to the employment and compensation of professionals. The process is designed so as to permit parties in interest to understand (as a result of the notice and disclosure required by those procedures) the extent to which the estate may be depleted by the employment of the proposed professional.[4] Had those procedures been followed in this case, the Court would not have been presented with these matters in this unfortunate manner. As the Debtor has failed to satisfy the test set out in *Tidewater Mem'l Hosp.*, the Court will not approve Martin's retroactive employment.

---

[3] See note 1 *supra*.

[4] In addition, Rule 2014(a) of the Federal Rule of Bankruptcy Procedure requires the application for such employment to state specific facts showing the necessity for the employment, the reasons for the selection, the services to be rendered, any proposed arrangement for compensation, full disclosure of the identity of the professional, and any connections with the employing party, the debtor, creditors, and any other party in interest.

Nor is Martin entitled to compensation under § 503(b)(4) of the Bankruptcy Code for his "substantial contribution" to this case. That section provides compensation only for professional services incurred by an entity whose expenses are allowable under § 503(b)(3) of the Bankruptcy Code.[5] Section 503(b)(3) provides administrative expense priority for expense reimbursement to six types of entities:

> (A) a creditor that files a petition under section 303 of this title;
> (B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;
> (C) a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;
> (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;
> (E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian; or
> (F) a member of a committee appointed under section 1102 of this title, if such expenses are incurred in the performance of the duties of such committee;

11 U.S.C. § 503(b)(3) (Supp.V 2005).

As the Debtor does not fall into any one of these six categories, its proposed compensation of Martin is not allowable as an expense under 11 U.S.C § 503(b)(4) no matter how substantial his contribution may have been to this case.

For the reasons stated herein, the Court will enter an order sustaining the Committee's Objection and the objection of the U.S. Trustee, and denying the Debtor's Motion.

Entered: _____

                          /s/ Kevin R. Huennekens
                      UNITED STATES BANKRUPTCY JUDGE

---

[5] Section 503(b)(4) provides in pertinent part for the "reasonable compensation for professional services rendered by an attorney or an accountant *of an entity whose expense is allowable under subparagraph (A), (B), (C), (D),or(E) of paragraph 3 of this subsection* . . . ." 11 U.S.C. § 503(b)(4) (Supp. V 2005) (emphasis added). The Debtor is not an entity whose expense is allowable under any of those subparagraphs of subsection 3 of § 503(b).

6

Copies to:

David K. Spiro
Neil E. McCullagh
Cantor Arkema, P.C.
Post Office Box 561
Richmond, VA  23218-0561

Bruce H. Matson
Richard D. Scott
LeCLAIR RYAN, a Professional Corporation
P.O. Box 2499
Richmond, VA  23218-2499

Robert B. Van Arsdale
Office of the U. S. Trustee
600 East Main Street, Suite 301
Richmond, VA  23219